**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Renee Wright, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-CV-529 |
| | ) | |
| vs. | ) | |
| | ) | |
| University of Cincinnati, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

This matter is before the Court on Defendant University of Cincinnati's motion for summary judgment (Doc. No. 24).  For the reasons that follow, Defendant's motion for summary judgment is not well-taken and is **DENIED.**

I. Background

Plaintiff Renee Wright presents a single claim for employment discrimination against her former employer, the University of Cincinnati, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  Plaintiff alleges that the University terminated her from her position as an SAP security analyst in the Office of Information Security because of her gender.  In relevant part, and generally speaking, Plaintiff's job duties included granting and removing employee access to information contained within the University's computer system.  The University terminated Plaintiff in September 2011 on the grounds that she caused or allowed three separate security breaches in a five-month period, the last two occurring while she was on a performance improvement plan ("PIP").

The first alleged security breach was discovered in May 2011.  At the time, the University had recently completed installing an employee self-service module ("ESS") in the computer system.  Among other things, the ESS modifications allow employees to access their personnel files and make changes to their financial information, such as the bank where their pay is to be deposited.  After the ESS modifications went live, two separate department heads noticed that upwards of 700 University employees had been granted access to view the financial information of all University employees.  Doc. No. 20-1, at 80-81, 84-85.  An investigation by Plaintiff's department into this alleged security breach found that in February 2011, Plaintiff entered the code changes that allowed this broad access to employees' financial information pursuant to an email she received from Christine Diersing, the director of Business Core Systems - the department that was apparently responsible for administrating that domain of the system.  Vykhovanyuk Dep. (Doc. No. 20) at 35.

Plaintiff was charged with a security breach for this incident because Diersing made the request for a change in system access through an email rather than via the Solutions Manager function of the system.  According to the University, the formal procedure required system change requests to be made through the Solutions Manager so that the requested change could be properly vetted and tested before it went live.  Plaintiff was put on a PIP for making this system change in violation of the established procedure.  Plaintiff, however, has presented evidence that she documented the change she made in the system itself as well as the source authorizing the change.  Doc. No. 20-1, at 13.  There is also in the record an email Diersing authored at the time that the alleged security breach was discovered indicating the access changes Plaintiff entered

had previously been considered and approved and worked the way they were supposed to have worked. <u>See</u> Doc. No. 20-1, at 71.[1] In other words, according to Plaintiff, the access changes she made were authorized and the results anticipated by the responsible party or parties. <u>See</u> <u>also</u> Doc. No. 20-1, at 19 (internal system note dated April 14, 2011 stating "A check was made into the ESS services for appearance and functionality resulting from the CE switch in production. <u>All services function as anticipated</u>.")(emphasis added).

      Plaintiff was charged with a second and similar security breach in June 2011. Plaintiff's co-worker, Larry McCullough, changed the access to a certain database of human resources employee Larry Suttles. Suttles, however, needed continued access to the database to do his job and emailed the OIS to restore it. Plaintiff saw Suttles's email and was aware that he had previously been authorized access to the database. Plaint. Dep. at 192-95. Plaintiff, therefore, restored Suttles's access to the database. Somehow - it is not clear on the record - Plaintiff's supervisor became aware that she granted Suttles's request. Pursuant to a directive from Diersing, McCullough removed

---

[1]      In pertinent part, Diersing wrote:

> Mike, this is not new. Bank Details has [sic] been available to BA's since go-live. We had many discussions in PCLG, with the Liaisons, and at the HRAC about data being available and data not being available to BA's. What they can maintain and what they cannot maintain. . . . In the end HR relented and approved the availability of <u>all</u> data with the exception of SSN and some data that goes into calculating net pay (I.E., garnishments and benefits data). We agreed they would be able to "view" much of the ESS data that was going to be the responsibility of the employee to maintain via ESS now and not the BA's (including bank information).

<u>Id.</u> (emphasis in original).

Suttles's access to the database again.  Later, however, Diersing's manager, Toni

Lucas, directed that Suttles's access be restored again.  <u>See</u> Doc. No. 20-1, at 92-98.

Plaintiff, nevertheless, was cited for a security breach for accepting Suttles's access

request without proper authorization.

Plaintiff was charged with a third and final security breach in August 2011.  On

this occasion, Plaintiff became aware that an HR employee named Valerie Reid

transferred to a new department and no longer would need access to two of the

system's databases.  Plaintiff reminded HR to send her a request to change Reid's

access to these databases.  HR did send a change request to Plaintiff through the

appropriate channels.  According to Plaintiff, she had two windows open on her

computer to enter the access changes but one of them, unbeknownst to her, "timed out"

and was not completed.  Plaintiff testified that normally when she made security

changes, the system would automatically generate a report the next day so she could

verify her work.  On this occasion, however, there was a power outage in the data

center and the system did not generate the report.  Plaintiff did not take any other steps

to verify that the changes had been completed.  Four days went by until it was

discovered that Plaintiff failed to change Reid's access to the one of the databases.

Plaint. Dep. at 203-11.

Because Plaintiff committed three security violations in just over five months, her

immediate supervisor, Bogdan Vykhovanyuk, and division assistant vice president,

Kevin McLaughlin, decided there were sufficient grounds to terminate her for neglect of

duty.  They passed along this request to Melissa Berling, the Director of Business

Affairs.  On September 8, 2011, Berling, in consultation with the legal and human

4

resources departments, authored a letter to Plaintiff informing her that her termination

was under consideration and set out the bases for that decision - namely the three

security violations just described.  In accordance with University policy, Berling gave

Plaintiff twenty-four hours to respond to her letter and explain why she should not be

fired.  Doc. No. 19-1, at 29-30.

        In her response, Plaintiff highlighted her "exemplary" performance reviews prior

to the cited security violations.  With regard to the first violation, Plaintiff indicated

essentially that she had only done what she had been asked to do and that it was not

the responsibility of the security department to test and approve the requested change.

With regard to the second violation, Plaintiff indicated that Suttles' security access had

been revoked in error, that there was authorization on file for the access he requested,

and that Suttles's manager had reminded McCullough not to change the access of any

of her employees without her prior approval.  Finally, as to the third violation, Plaintiff

explained that the power outage in the data center prevented her from being able to

double-check her work.  Doc. No. 19-1, at 31-32.

        The following day, Berling wrote a letter confirming the decision terminating

Plaintiff's employment.  Doc. No. 18-1, at 51.  As to Plaintiff's contention that her annual

reviews had been exemplary, Berling replied that she received an overall rating of "2.0"

on her June 2011 review and a "2.50" on her 2010 review, both of which were below

average.  As to the first two security violations, Berling affirmed her finding that Plaintiff

made security changes outside of normal business practices.  Finally, Berling did not

accept Plaintiff's excuse for the third violation, noting that she had four days after the

power outage in which to verify that the access changes she made had gone through.

5

Plaintiff filed a timely complaint of gender discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter. Complaint ¶ 13. As mentioned above, Plaintiff filed a single-count complaint against the University alleging that she was terminated from her job because of her gender in violation of Title VII of the Civil Rights Act of 1964.

The University has filed a motion for summary judgment which is now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that

6

there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id.</u> at 250.  "If the evidence is merely colorable, . . .  or is not significantly probative, . . . the court may grant judgment."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

### III. <u>Analysis</u>

A Title VII plaintiff can establish a discrimination claim through direct or circumstantial evidence.  "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  <u>Johnson v. Kroger Co.</u>, 319 F.3d 858, 865 (6th Cir. 2003).  Plaintiff has not adduced any direct evidence that her termination was motivated by her gender, nor in fact does she contend that there is direct evidence of discrimination.  Plaintiff's claim, therefore, must be analyzed through the <u>McDonnell Douglas</u> burden-shifting framework for establishing a circumstantial case of discrimination.

A plaintiff can establish a prima facie case of disparate treatment discrimination circumstantially by adducing sufficient evidence on the following elements: 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class. Griffin v. Finkbeiner, 689 F.3d 584, 592 (6th Cir. Cir. 2012). A plaintiff may also satisfy the fourth element by showing that the employer treated similarly-situated non-protected persons more favorably than the plaintiff. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994). If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual. Id. The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken. Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997).

The burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). In the end, in order to prevail on her discrimination claim, a Title VII plaintiff must prove that her protected characteristic was a motivating factor in the employer's adverse employment action. University of Tex. Sw. Med. Center v. Nassar, 133 S. Ct. 2517, 2522-23 (2013).

In this case, the University concedes that Plaintiff can establish a prima facie case of gender discrimination and Plaintiff does not contest that the University has proffered a legitimate non-discriminatory reason for terminating her. The only issue on summary judgment, therefore, is whether Plaintiff has adduced sufficient evidence of pretext to warrant a jury trial on her claim. Although it is a close question, the Court concludes that Plaintiff has established enough evidence to call into question the University's motivation for terminating her.

A reasonable juror could find that the University's stated reasons for terminating her had no basis in fact, were not serious enough to warrant her termination, and/or that she was treated differently than a similarly-situated male. As Plaintiff indicates in her brief, while she technically violated protocol by entering changes based on emails instead of via Solutions Manager, the first two security breaches arguably were not security breaches at all. As to the first incident, Plaintiff produced evidence that she made the change pursuant to a request from a person with authority to make that request. Moreover, Plaintiff adduced evidence that it was already anticipated that by entering this change that the financial information of University employees would be accessible to a large number of other University employees. See, supra, at 3 & 3 n.1. Similarly, in the second incident, Plaintiff produced evidence that she only gave Suttles the access he was supposed to have after McCullough, her male co-worker, improperly removed it. Indeed, the event came full circle as Suttles's access was removed again but then restored once more after his supervisor complained about the first, unauthorized removal. Vykhovanyuk Dep. at 104. Plaintiff also produced evidence that McCullough was criticized by Suttles's supervisor for changing his access without her

approval and that McCullough was not disciplined for doing so.  Doc. No. 20-1, at 92-93; McCullough Dep. at 117-19.

Plaintiff stands on weaker ground in the third incident.  Plaintiff conceded in her deposition that she could have taken other steps to verify that the changes she made to Reid's access were actually completed in the system.  On the other hand, as Plaintiff points out, she was the one who first discovered that Reid needed to have her access restricted and brought it to Reid's department head's attention.  Plaintiff, therefore, arguably discovered and helped to close a security breach left open by others.  Additionally, Plaintiff adduced evidence that after her termination, McCullough failed to remove her access to the SAP system and yet was not disciplined for this omission.  Plaint. Dep. at 240-45; McCullough Dep. at 125-29.  Plaintiff also testified that her supervisors ignored her or took no action when she reported McCullough's security breaches, such as leaving his computer unattended and unlocked. Plaintiff Dep. at 138-39; 166-69.

Plaintiff has adduced other evidence of pretext that, while not particularly strong in and of itself, adds color to her discrimination claim.  Plaintiff produced evidence that although Berling was the ultimate decision-maker, McLaughlin played a role in disciplining Plaintiff and endorsing her termination.  Vykhovanyuk Dep. at 57, 112; Berling Dep. at 74, 78-79.  In turn, Plaintiff has some evidence of discriminatory animus on McLaughlin's part.  For instance, on one occasion McLaughlin was ordering golf shirts for his staff.  In trying to decide what size to order, Plaintiff asked McLaughlin whether he would be ordering any women's shirts.  In response, McLaughlin said, "That's one of the reasons I only want men on my team."  Plaint. Dep. at 67.  Plaintiff

10

also testified that McLaughlin had an open-door policy for the men in the department but not for women.  Id. at 86-97.  Plaintiff also said that she was excluded from certain social events in which male staff members participated.  Id. at 166.  Again, while not independently compelling, this evidence lends support to Plaintiff's claim that her gender was a factor in her termination.  See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998) (discriminatory remarks of persons who may have influenced adverse employment decision are relevant evidence of pretext).

In support of its motion for summary judgment, the University relies in part on the "honest belief rule."  The honest belief rule holds that "that so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."  Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998).  In order for the employer to be protected by the honest belief rule, it must demonstrate that it made a reasonably informed and considered decision before taking the adverse employment decision.  Seeger v. Cincinnati Bell Tele. Co., LLC, 681 F.3d 274, 285 (6th Cir. 2012).  The employee then has an opportunity to show that the employer did not make a reasonably informed decision, thereby making its decisional process "unworthy of credence."  Smith, 155 F.3d at 807-08.

In this case, the University did go through a fact-gathering exercise independent of the recommendations of Plaintiff's immediate supervisors to terminate her.  Specifically, it appears that Berling reviewed the relevant security incident reports and conducted an independent investigation at least in connection to her reply to Plaintiff's

11

response to the termination notice.  The University, therefore, is entitled to prima facie reliance on the honest belief rule.

Plaintiff, however, has adduced sufficient evidence to call into question the reliability of the University's investigation.  For instance, Berling rejected Plaintiff's assertion that her performance reviews had been exemplary by reading only her last two reviews.  These two reviews were indeed below average, as Berling commented in her letter.  But Plaintiff has adduced evidence that she may have been discriminatorily treated in her 2010 review.[2]  Additionally, Berling apparently ignored evidence that favored Plaintiff.  See, e.g., Shazor v. Professional Trans. Mmgt., Ltd., 744 F.3d 948, 960-61 (6th Cir. 2014) (employer not entitled to summary judgment on honest belief rule where investigation consisted only of interviewing one person about plaintiff's alleged misconduct); Simmons v. American Apt. Mmgt. Co., Inc., 1 F. Supp.3d 838 (E.D.Tenn. 2014) (juror could find that employer failed to make reasonably informed decision where it only interviewed witnesses known to have had conflicts with the plaintiff); McNeely v. Kroger, No. 12–12608, 2014 WL 3529420, at *6 (E.D.Mich. July 16, 2014) (employer's decision must be based on "particularized facts").  Specifically, Berling apparently gave

---

[2]        In 2010, Plaintiff received a "2.0" in "core behavioral competencies" and two 3.0's and four 4.0's in the remaining six categories but received an overall rating of 2.5.  Plaintiff's review apparently was negatively impacted because of an argument she had with McCullough - an incident that was specifically cited in her review.  Doc. No. 19-1, at 18-20.  McCullough's performance review mentioned the same incident.  McCullough, however,  received a 3.0 in "core behavioral competencies" and four 3.0's and two 4.0's in the remaining six categories but he received an overall rating of 3.0.  Doc. No. 19-1, at 5-6.  It appears, therefore, that Plaintiff was treated more unfavorably than McCullough in this review.  Her overall marks were basically higher than McCullough's but she was judged more severely than McCullough in core behavioral competencies even though they both engaged in the same behavior.

no consideration to Plaintiff's claim that - at least in the first two incidents - her actions were authorized and that she was not, therefore, responsible for causing a security breach.  Compare McNeely, 2014 WL 3529420, at *6 (employer not entitled to summary judgment pursuant to honest belief rule where employer failed to provide evidence that it investigated plaintiff's claim that her supervisor gave her permission to leave work early).

The Court reiterates that the question whether the University is entitled to summary judgment is a close call.  In the end, however, Plaintiff has adduced some evidence of pretext.  That, coupled with her ability to establish a prima facie case of discrimination, is sufficient to present her claim to a jury.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Accordingly, the University's motion for summary judgment is not well-taken and is **DENIED.**

**IT IS SO ORDERED**

Date September 30, 2014            s/Sandra S. Beckwith
                                     Sandra S. Beckwith
                         Senior United States District Judge